**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**Coupled Products, LLC,**

      **Plaintiff/
      Counter-Defendant,**              **Civil Action No. 09-12081**

   **vs.**                                         **District Judge Denise Page Hood**

**Component Bar Products, Inc.,**         **Magistrate Judge Mona K. Majzoub**

      **Defendant/
      Counter-Plaintiff.**
_____/

**ORDER AND OPINION DENYING DEFENDANT'S MOTION TO PRECLUDE
PLAINTIFF FROM SEEKING IN-SOURCED DAMAGES [47]**

Before the Court is Defendant Component Bar Product's motion to preclude Plaintiff Coupled Products from seeking to recover for alleged in-sourcing costs as damages. (Dkt. 47.) The district court referred the motion to this Court pursuant to 28 U.S.C. § 636(b)(1)(A). (Dkt. 51.) The Court has reviewed the pleadings, held a hearing on this motion on October 13, 2011, and is now ready to rule.

For the reasons stated below, the Court **DENIES** Defendant's motion to preclude damages, reopens discovery for 45 (forty-five) days, and shifts the costs of some of the additional discovery to Plaintiff because the Court finds that Plaintiff's late damages update has prejudiced Defendant.

    **1.**       **Facts**

Plaintiff brings this action against its supplier Defendant and makes claims for breach of contract, anticipatory repudiation, unjust enrichment/quantum meruit, conversion and claim and delivery. (Compl.) Plaintiff makes and supplies automotive hose and tube assemblies and Defendant makes and supplies machined automotive components. In 2001, Dana Corporation began

ordering products from Defendant pursuant to a purchase order. In May, 2008 Coupled Products Acquisition Company (later Plaintiff Coupled Products, LLC) entered into an asset purchase agreement with Dana Corporation. In September, 2007 Plaintiff commenced operations and alleges that it sent a revised purchase order to Defendant with its new contractual terms and conditions and that Defendant began shipping its product. Plaintiff alleges that the final purchase order contains the payment term "Net 60 Days."

Plaintiff alleges that on January 7, 2009, Defendant unilaterally notified Plaintiff via telephone that Defendant would not continue to deliver parts unless Plaintiff made full cash-in-advance payment on all outstanding and future invoices associated with the purchase order prior to shipping. (Compl. ¶ 24). Plaintiff argues that as a result, it was required to contract for production and delivery of the parts from two other suppliers and that Plaintiff's damages are more than $150,000.

Defendant filed a counter-claim and argues that its invoice(s) to Plaintiff contain a "Net 30 Days" payment term. (Dkt. 9, Def.'s Reply to Pl.'s Mot. to Change Venue, ¶ 9). Defendant alleges that, during 2008 and 2009, Plaintiff failed to timely pay many of Defendant's invoices which resulted in a "growing accounts payable". (*Id*. at ¶ 11). Defendant alleges that it made repeated demands that Plaintiff make payments. Defendant alleges that Plaintiff's failure to timely pay was a breach and that Plaintiff failed to cure its breach. Defendant brings claims for breach of contract and account stated. Defendant alleges that Plaintiff owes $348,071.97, excluding interest.

**2.     Defendant's motion to preclude Plaintiff from seeking alleged in-sourcing damages**

Since the beginning of the lawsuit, Defendant alleges that Plaintiff has sought "three distinct categories of damages:" (1) cover damages paid to three alternate suppliers; (2) internal labor costs

allegedly incurred by Plaintiff to resource Defendant; and (3) "the value of raw material that Plaintiff mistakenly believes was delivered to, and still in the possession of [Defendant]." (Def.'s Mot. at 2.)

Defendant states that, throughout discovery, Plaintiff has sought $9,768.16 in additional internal labor costs and expenses, $156,049.88 in raw additional material expenses and $ 338,678.71 in additional component costs. (Def.'s Mot. at 2.) (citing Def.'s Mot., Ex. 1, Pl.'s Answer to Def.'s First Set of Interrogatories, No. 9.) In answering the First Set of Interrogatories, Plaintiff stated that it would produce its responsive business records in its possession to further answer Defendant's question about damages. (*Id.*)

Defendant next argues that it had given Plaintiff an opportunity to discuss the damages that Plaintiff had listed as well as an opportunity to discuss "resourcing and/or in-sourcing efforts and costs." (Def.'s Mot. at 2) (citing Def.'s Mot., Ex. 2, Fed.R.Civ.P. 30(b)(6) Notice at 2.) That notice further requests Plaintiff to produce a witness to discuss "[a]ll of the damages that [Plaintiff] seeks to recover on its claims." (*Id.*)

Plaintiff produced Joseph L. Kochan as its Rule 30(b)(6) witness. (Def.'s Mot., Ex. 3, Kochan Dep.) Kochan stated that it produced a damages report "to define the damages that [Plaintiff] experienced[.]" (Kochan Dep. at 85.) Defendant asked Kochan: "If a part was in-sourced, is [Plaintiff] claiming any damage with respect to in-sourced parts?" Kochan answered, "[n]o." (Kochan Dep. at 94.) The following exchange then occurred:

> Defendant: So you're saying the only damages that [Plaintiff] is asking for, only with respect to parts that were sourced elsewhere, are the parts that are identified here[?]"
>
> Kochan: That's correct.

(Kochan Dep. at 94.) Defendant states that, because of Kochan's deposition, it "did not engage in

3

any specific discovery as to costs that [Plaintiff] may have incurred to in-source parts." (Def.'s Mot. at 4.)

Defendant states that, on April 7, 2011, three days before the close of discovery, Plaintiff supplemented its damages calculation to include $74,803.46 in costs incurred "to insource two of the parts[.]" (Def.'s Mot. at 6.) Defendant argues that Plaintiff knew of this in-sourcing damage claim more than two years ago. (*Id.*) Defendant further argues that "all of the invoices that . . . document [Plaintiff's] newly announced damages claim are dated between April and October 2009." (*Id*. at 6-7.)

Defendant argues that Plaintiff's delay in revealing this new damages claim prejudices it because it "would have taken discovery and depositions regarding those alleged damages." (*Id*. at 7.) Defendant also argues that it could have raised the issue at previous depositions and that it could have deposed necessary tooling suppliers. (*Id.*)

Defendant therefore moves the Court to strike Plaintiff's alleged in-sourcing costs from the record and preclude Plaintiff from seeking that damage amount at trial. (*Id.*)

### 3. Plaintiff's response

Plaintiff argues that its supplemental damages calculation is a clarification of a prior damages calculation, not a new request for damages. (Pl.'s Resp. at 1.) Plaintiff therefore states that its supplementation is within and required by the Federal Rules of Civil Procedure. (*Id.*)

Plaintiff states that in March, 2011, it claimed $134,210.45 in costs to replace parts that Defendant failed to supply when Defendant allegedly repudiated its contract with Plaintiff. (*Id.*) Plaintiff now states that the amended figure that it provided to Defendant separated that original damages amount into two sections: 1) costs to alternative suppliers–$85,317.02, and 2) costs to

4

Plaintiff to assume responsibility for parts that had been machined by Plaintiff–$74,803.46. (*Id*. at 1-2.) Plaintiff alleges that it made a representative witness available to testify as to the amended damages. (*Id*. at 2.)

Defendant argues that the $134,210.45 amount cannot include in-sourcing costs, for Kochan testified that that amount "only covers [Plaintiff's] then-alleged cover damages, and not in-sourcing costs." (Def.'s Reply at 1.) Defendant argues that, mathematically speaking, the $134,210.45 "cannot include the newly alleged in-sourcing costs." (*Id.*)

Plaintiff argues that its supplementation was required by Rule 26(e)(1). That Rule requires a party to supplement if it learns that it has produced an incomplete or incorrect material disclosure or response. Fed.R.Civ.P. 26(e)(1).

Plaintiff acknowledges that its Rule 30(b)(6) witness, Kochan, testified that Plaintiff was not seeking damages for in-sourced parts. (*Id*. at 3.) But Plaintiff states that plaintiff Kochan "was mistaken in his belief that [Plaintiff] was not claiming damages for the internally produced parts."[1] (*Id*. at 3-4.) Plaintiff further states that the damages calculation that Kochan testified about included both internal and external costs. (*Id*. at 4.)

Plaintiff states that it corrected Kochan's mistake during the deposition of its executive vice president, Jonathan Drew. (*Id*.) Plaintiff states that Drew testified as to the amended damages and

---

[1] Kochan's testimony does not unequivocally bind Plaintiff. See *Whitesell Corp. V. Whirlpool Corp.*, 2009 WL 3672751, at *1 (W.D.Mich. Oct. 30, 2009) (Bell, J.) (stating, "although the testimony of a 30(b)(6) designee may be binding on the corporation, the Court does not agree that 30(b)(6) testimony precludes the introduction of all other evidence the relates to the designee's testimony, inconsistent or not.)(And citing cases for the proposition that the Rule 30(b)(6) designee's testimony is not tantamount to a judicial admission; the testimony may be altered and then may be "explained or explored through cross-examination as to why the opinion or statement was altered.") (citations omitted).

5

that Defendant asked "many questions about the new summary and how it was calculated" as well as question about how Plaintiff "calculated its costs related to the in-house parts." (*Id*. at 4, Ex. 3, Drew Dep.)

Drew stated that he "assum[ed] that Kochan was aware that certain parts were in-sourced. (Drew Dep. at 11.) Drew later was asked:

> Q: Well, is it fair to say that [Plaintiff] is seeking damages with respect to two parts that they had to insource?

He answered:

> [Plaintiff] is not seeking damages from a piece price standpoint similar to what would be on Coupled 870 for any parts that were insourced. For example, BKB, [(an alternate supplier)] once those parts were insourced, we do not have any of those volumes associated with what we're trying to capture; but what [Plaintiff] is trying to capture is the fixed sub-costs associated with having to tool to be able to produce these parts internally.

(Drew Dep. at 63.)

### 4. The hearing

At the hearing, Plaintiff acknowledged that it supplemented its damages only a few days before the close of discovery. Plaintiff also stated that it did have the information since the start of the controversy, but that it started to look at the damages claim in a different way just before the close of discovery. Plaintiff stated that it would be willing to make Drew available for another deposition but that it did not understand why it would need to make Kochan available, because Kochan no longer works for Plaintiff.

Defendant responded that it would need to retake the depositions of both Drew and Kochan, so that it could straighten out why Plaintiff had not claimed the damages before. Defendant also stated that it would need take the depositions of eight suppliers, so that it could determine what were

the actual in-sourcing damages.

### 5. The Court's holding

After thoroughly reviewing the pleadings and hearing the parties, the Court finds that Plaintiff's delay in supplementing its damages calculations has prejudiced Defendant. Plaintiff, in "updating" its damages claim on the cusp of the close of the discovery period, when it had all of the information within its possession and control since the case's beginning, violated the spirit of discovery.

But the Court also finds that striking Plaintiff's damages claim is too severe a sanction for its delay in claiming its in-sourcing damages calculations.

The Court therefore reopens discovery for a limited time for the limited purpose of fleshing out the in-sourcing damages claim. The Court also imposes various limitations on the discovery, as ordered below.

**IT IS THEREFORE ORDERED** that Defendant's motion to preclude in-sourcing damages is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff must bear the majority of the costs to re-open discovery in this matter. Plaintiff therefore must:

- pay all costs and fees for the re-deposition of its Rule 30(b)(6) witnesses, Jonathan Drew and Joseph Kochan. These depositions are to be completed within three (3) hours. Fed.R.Civ.P. 26(d)(1). The Court suggests that Plaintiff give consideration re-taking these two depositions by video deposition or some other economically feasible means, but does not specifically so order, leaving the manner and format of

      deposition to the discretion of the Plaintiff;

- pay the costs and fees for four additional alternate supplier depositions. At the hearing held on October 13, 2011, Defendant indicated that it would need to depose up to eight additional third-party suppliers. The Court finds that Plaintiff should bear the costs of four of these depositions. If Defendant desires more than the four depositions, the parties will bear the costs in the normal discovery fashion. These depositions are to be no longer than four (4) hours in length.

**IT IS FURTHER ORDERED** that the extension of discovery is limited to the sole issue of in-sourcing costs. No other discovery or inquiry is to be made outside of this limited issue.

The parties must complete this additional discovery within 45 days of this order.

## NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: October 24, 2011        s/ Mona K. Majzoub
                                      MONA K. MAJZOUB
                                      UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: October 24, 2011        s/ Lisa C. Bartlett
                                       Case Manager