**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**COUPLED PRODUCTS LLC,**

    Plaintiff,

v.

**COMPONENT BAR PRODUCTS, INC.,**

    Defendant.

_____/

Case No. 09-12081

Honorable Denise Page Hood

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT,
GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
and
NOTICE OF STATUS CONFERENCE DATE**

**I.     INTRODUCTION/BACKGROUND**

On May 29, 2009, Plaintiff Coupled Products, LLC ("Coupled Products") filed the instant action against Defendant Component Bar Products, Inc. ("Component Bar") alleging four counts:: Breach of Contract (Count I); Anticipatory Repudiation (Count II); Unjust Enrichment/Quantum Meruit (Count III); Conversion (Count IV); and, Claim and Delivery (Count V).  Component Bar filed a Counterclaim alleging Breach of Contract (Count I) and Account Stated (Count II).

Coupled Products is a manufacturer and supplier of automotive hose and tube assemblies. (Comp., ¶ 5)  Component Bar is a supplier of machined components used in the automotive and other industries. (Comp., ¶ 6)  Dana Corporation ("Dana") ordered precision-machined automotive component parts from Component Bar pursuant to Purchase Order No. P110065 beginning in 2001. (Comp., ¶ 7)  Coupled Products Acquisition, LLC entered into an Asset Purchase Agreement with Dana on May 28, 2007, with closing on September 21, 2007.  (Comp., ¶¶ 8-9)  Coupled Products

commenced its operation thereafter, drafting letters to the suppliers of the new legal entity on September 24, 2007 and sending an email to Component Bar on September 25, 2007. (Comp., ¶¶ 10-11)

Both Coupled Products and Component Bar agree that the purchase order governing their relationship is P110065-17.  Coupled Products claims that the Terms and Conditions, revised 7/25/07, are also a part of the agreement between the parties since P110065-17 notes the Terms and Conditions form on the last page. (P110065-17, Ex. 5 to Def.'s Motion; Ex. 1 to Pl.'s Motion) Component Bar disputes that it agreed to the 7/25/07 Terms and Conditions and that the only agreement between the parties is contained in the five-page Purchase Order, P110065-17.

This matter is before the Court on partial summary judgment motions filed by both parties. Responses and replies have been filed.  A hearing was held on the matter.

## II.   ANALYSIS

### A.   Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.  Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23.  A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Breach of Contract, Count I of Complaint and Count I of Counterclaim

Coupled Products argues that there is no genuine issue of material fact that Component Bar breached the purchase order, P110065-17, and the 7/25/2007 Terms and Conditions, by unilaterally changing the payment terms from 60 days to cash in advance and refusing to ship any more parts until all past orders had been paid, whether or not payment was due.

Component Bar claims that Coupled Products first breached the only governing agreement between the parties, purchase order P110065-17, by failing to timely pay past due invoices and by failing to pay in advance when Component Bar accelerated its payment terms.  Component Bar asserts that the 7/25/2007 Terms and Conditions did not apply.  Because the purchase order, P110065-17, was open-ended and had no end date or stated duration, Component Bar argues it had the authority to terminate the purchase order at any time after reasonable notice under the Uniform Commercial Code, U.C.C. § 2-309.

A plaintiff must establish the following to state a breach of contract claim: 1) that the parties entered into a valid enforceable contract that included the terms and conditions claimed by plaintiff; 2) that the defendant breached the contract; and, 3) that the defendant's breach caused a loss to the plaintiff. *Platsis v. E.F. Hutton & Co.*, 642 F.Supp. 1277 (W.D. Mich. 1986); *Pittsburgh Tube Co.*

*v. Tri-Bend, Inc.*, 185 Mich. App. 581 (1990).  In Michigan, the paramount goal when interpreting a contract is to give effect to the intent of the contracting parties.  *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000).  The court is to read the agreement as a whole and attempt to apply the plain language of the contract itself.  *Id*.  If the intent is clear from the language of the contract itself, there is no place for further construction or interpretation of the agreement.  *Farm Bureau Mut. Ins. Co. v. Nikkel*, 460 Mich. 558, 566 (1999).  A contract provision that is clear and unambiguous must be "taken and understood in [its] plain, ordinary, and popular sense."  *Mich. Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81 (1994).  Unambiguous contract provisions are not subject to interpretation and must be enforced as written.  *Id*.

   As agreed to by both parties, purchase order P110065-17 governs.  A review of P110065-17 shows that the parties agreed to the delivery of several parts produced by Component Bar.  The purchase order sets forth the quantity and unit price of each item, along with delivery dates.  The terms include "net 60 Days ACH."  Both parties agree that this means that Coupled Products had 60 days to pay Component Bar.  (Coupled Prod. Motion, p. 3)  P110065-17 states on each page, "NOTE:  SEE LAST PAGE FOR TERMS/CONDITIONS FORM."  The 7/25/07 Terms and Conditions provides the term of the agreement as five years from the effective date set forth in the purchase order.  (7/25/07 Terms and Conditions, ¶ 2)

   Prior to P110065-17, the parties agreed to P110065-*15* but Component Bar claims it only agreed to be governed by the Terms and Conditions set forth by Dana Corporation.  (Ex. 3, Def.'s Br., 9/27/07 email by Rath)  The Supply Agreement between Dana Corporation and Component Bar provides that the Agreement was in effect for three years from the date the last party signed the Agreement.  Component Bar signed the Supply Agreement on June 22, 2006.  (Dana Supply Agr., Ex. 2, Component Bar Resp. Br.)

Component Bar argues that it is not bound by either the Dana Corporation Supply Agreement, which would be in effect until June 2009, or the 7/25/07 Terms and Conditions accompanying the P110065-17. Coupled Products claims that Component Bar is governed by the 7/25/07 Terms and Conditions which were sent with the P110065-17 purchase order. Coupled Products argues that Component Bar's September 27, 2007 email regarding a different purchase order, P110065-*15*, establishes that Component Bar knew how to reject the Terms and Conditions Coupled Products sent with the P110065-*15* purchase order. Coupled Products claims Component Bar did not reject the 7/25/07 Terms and Conditions sent with the P110065-17 purchase order, since there was no communication rejecting the 7/25/07 Terms and Conditions, similar to the email sent by Component Bar rejecting the Terms and Conditions sent with the P110065-*15* purchase order.

Component Bar acknowledges that the UCC governs this matter. In Michigan, a contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract. M.C.L. § 440.2204(1). Case law indicates that an actual signature is unnecessary; rather, it is enough if the document contains the letterhead or the buyer's name and address. *Benedict Mfg. Co. v. Aeroquip Corp.,* 2004 WL 1532280 *5 (Jul. 8, 2004). Michigan law provides that terms with respect to which there is a confirmatory memoranda of the parties or a writing, may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement but may be explained or supplemented by course of dealing or usage of trade or by course of performance and by evidence of consistent additional terms unless the court finds the writing to have been intended as a complete and exclusive statement of the terms of the agreement. M.C.L. § 440.2202.

The Court need not resort to the parties' course of dealing since the clear and unambiguous language in the purchase order governing the parties' conduct, the P110065-17 purchase order,

5

clearly notes on each page a reference to the Terms and Conditions attached.  Component Bar did not reject these particular Terms and Conditions as it did with the P110065-*15* purchase order.  Component Bar admits that the P110065-17 purchase order governs in this case, accordingly, the 7/25/07 Terms and Conditions also governs the parties' relationship and conduct.

Coupled Products has submitted sufficient evidence to show that in January 2009, Component Bar demanded a change to 60 day payment term set forth in the purchase order, to payment by cash in advance.  Component Bar admits to doing so claiming that Coupled Products was late with its payments.  However, nothing in the purchase order or the Terms and Conditions gave Component Bar the right to demand cash in advance.

As to Component Bar's argument that Coupled Products first materially breached the contract by failing to timely pay invoices, Michigan courts have ruled that a material or substantial breach is one "where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is rendered ineffective or impossible." *McCarty v. Mercury Metalcraft Co.,* 372 Mich. 567 (1964).  Courts have held that failure to timely meet payment does not constitute a substantial breach.  *Baith v. Knapp-Stiles, Inc.,* 380 Mich. 119 (1968).  Component Bar has not shown that Coupled Products' failure to timely pay the invoices constitutes a material breach.  Component Bar cannot show that Coupled Products first materially breached the contract between the parties.

Given that the 7/25/2007 Terms and Conditions apply in this case, Component Bar materially breached the contract by failing to ship any parts after January 2009.  As noted above, the 7/25/2007 Terms and Conditions state that the agreement's term was for five years from the effective date of the P110065-17 purchase order of December 5, 2007.  Summary judgment as to liability only is

entered in favor of Coupled Products as to the Breach of Contract claim in Count I.[1]

Based on this Court's ruling as to Coupled Products' Breach of Contract claim, there remains a genuine issue of material fact as to Component Bar's Counterclaim: Breach of Contract for failure to timely pay invoices (Count I) and Account Stated (Count II). Component Bar's Counterclaim and the exhibits attached to the Counterclaim rely on the P110065-17 purchase order. (Doc. No. 13, Counterclaim and Exhibits) The language in the 7/25/2007 Terms and Conditions, which this Court finds govern, allows Coupled Products the right to setoff or recoupment:

> 8. Invoice, Chargeback/Offset and Payment Terms.
>
> c. In addition to any right of setoff or recoupment provided by law, or as provided in Coupled Products Supplier Quality Development Manual, all amounts due to Supplier shall be considered net of indebtedness of Supplier and its affiliates/subsidiaries to Coupled Products LLC and Coupled Products LLC shall have the right to setoff against or to recoup from any amounts due to Supplier and its affiliates/ subsidiaries any amount as to which a *bona fide* dispute exists for any order by Coupled Products LLC arising out of this or any other transaction between Coupled Products LLC and the Supplier and its affiliates/subsidiaries.

(7/25/2007 Terms and Conditions, ¶ 8.c.) Based on this contract term, the Court finds a genuine issue of material fact exists as to Component Bar's Motion for Partial Summary Judgment.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Component Bar Products, Inc.'s Motion for Partial Summary Judgment **(No. 64, 5/31/2011)** is DENIED.

---

[1] Coupled Products states that it will dismiss its remaining claims if the Court grants summary judgment on its Breach of Contract claim in Count I.

IT IS FURTHER ORDERED that Plaintiff Coupled Products, LLC's Motion for Partial Summary Judgment **(No. 65, 5/31/2011)** is GRANTED. Liability as to the Breach of Contract claim in Count I of Plaintiff's Complaint is granted in Plaintiff's favor and against Defendant.

IT IS FURTHER ORDERED that a Status Conference is set on the matter for **Tuesday, May 8, 2012, 2:30 p.m.** Dates for the Final Pretrial Conference and Trial will be set at the conference.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: March 21, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 21, 2012, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager